# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| BMO BANK N.A., a national banking association, | ) ) ) |
| Plaintiff, | ) ) Case No. 1:25-cv-312 |
| v. | ) ) ) |
| ROAD LION CORPORATION, a corporation, | ) ) ) |
| Defendant. | ) ) ) |

## COMPLAINT

Plaintiff, BMO Bank N.A., by its attorneys, and for its Complaint against Defendant Road Lion Corporation, states as follows:

## PARTIES

1.  Plaintiff, BMO Bank N.A. f/k/a BMO Harris Bank N.A. ("Plaintiff") is a national banking association with its main office located in Chicago, Cook County, Illinois, as set forth in its articles of association. Effective September 3, 2023, Plaintiff adopted amended articles of association pursuant to which its corporate title was changed from "BMO Harris Bank National Association" to "BMO Bank National Association." For jurisdictional purposes, Plaintiff is a citizen of the State of Illinois.

2.  Defendant Road Lion Corporation ("Defendant") is a corporation incorporated under the laws of the State of Alabama with its principal place of business located in Mobile, Alabama. For jurisdictional purposes, Defendant is a citizen of the State of Alabama. Defendant may be served with process upon its registered agent, Perry Bryant, at 1229 North Drive, Mobile, Alabama 36605.

HB: 4928-7139-3366.1

## JURISDICTION AND VENUE

3. The parties are of diverse citizenship.

4. The amount in controversy exceeds the sum of $75,000.00 exclusive of interest and costs.

5. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a).

6. This court has personal jurisdiction over Defendant as Defendant is an Alabama corporation operating a business within the State of Alabama.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant's principal place of business is located in Mobile County, Alabama.

## FACTUAL ALLEGATIONS

8. Plaintiff realleges and incorporates by reference the foregoing paragraphs as though set forth fully herein.

### The Agreements

9. On or about May 22, 2018, Defendant entered into a Loan and Security Agreement (together with all amendments, modifications, and collateral documents relating thereto, the "First Agreement"), with Plaintiff wherein Plaintiff financed Defendant's purchase of the equipment described therein (the "First Loan Collateral"), and Defendant agreed to repay the financed amount, including interest, pursuant to the terms and conditions stated therein. A true and correct copy of the First Agreement is attached hereto and incorporated herein as **Exhibit A**.

10. Plaintiff performed all of its obligations under the First Agreement and did, in fact, finance Defendant's purchase of the First Loan Collateral. Defendant thereafter began making monthly payments to Plaintiff as required under the First Agreement.

11.     On or about June 15, 2018, Defendant entered into a Loan and Security Agreement (together with all amendments, modifications, and collateral documents relating thereto, the "Second Agreement"), with Plaintiff wherein Plaintiff financed Defendant's purchase of the equipment described therein (the "Second Loan Collateral"), and Defendant agreed to repay the financed amount, including interest, pursuant to the terms and conditions stated therein. A true and correct copy of the Second Agreement is attached hereto and incorporated herein as **Exhibit B**.

12.     Plaintiff performed all of its obligations under the Second Agreement and did, in fact, finance Defendant's purchase of the Second Loan Collateral. Defendant thereafter began making monthly payments to Plaintiff as required under the Second Agreement.

13.     On or about June 22, 2018, Defendant entered into a Loan and Security Agreement (together with all amendments, modifications, and collateral documents relating thereto, the "Third Agreement"), with Plaintiff wherein Plaintiff financed Defendant's purchase of the equipment described therein (the "Third Loan Collateral"), and Defendant agreed to repay the financed amount, including interest, pursuant to the terms and conditions stated therein. A true and correct copy of the Third Agreement is attached hereto and incorporated herein as **Exhibit C**.

14.     Plaintiff performed all of its obligations under the Third Agreement and did, in fact, finance Defendant's purchase of the Third Loan Collateral. Defendant thereafter began making monthly payments to Plaintiff as required under the Third Agreement.

15.     On or about December 20, 2019, Defendant entered into a Loan and Security Agreement (together with all amendments, modifications, and collateral documents relating thereto, the "Fourth Agreement"), with Plaintiff wherein Plaintiff financed Defendant's purchase of the equipment described therein (the "Fourt Loan Collateral"), and Defendant agreed to repay

the financed amount, including interest, pursuant to the terms and conditions stated therein. A true and correct copy of the Fourth Agreement is attached hereto and incorporated herein as **Exhibit D**.

16. Plaintiff performed all of its obligations under the Fourth Agreement and did, in fact, finance Defendant's purchase of the Fourth Loan Collateral. Defendant thereafter began making monthly payments to Plaintiff as required under the Fourth Agreement.

17. On or about January 29, 2020, Defendant entered into a Loan and Security Agreement (together with all amendments, modifications, and collateral documents relating thereto, the "Fifth Agreement"), with Plaintiff wherein Plaintiff financed Defendant's purchase of the equipment described therein (the "Fifth Loan Collateral"), and Defendant agreed to repay the financed amount, including interest, pursuant to the terms and conditions stated therein. A true and correct copy of the Fifth Agreement is attached hereto and incorporated herein as **Exhibit E**.

18. Plaintiff performed all of its obligations under the Fifth Agreement and did, in fact, finance Defendant's purchase of the Fifth Loan Collateral. Defendant thereafter began making monthly payments to Plaintiff as required under the Fifth Agreement.

19. The First Agreement, Second Agreement, Third Agreement, Fourth Agreement, and Fifth Agreement shall be referred to collectively herein as the "Agreements."

20. The First Loan Collateral, Second Loan Collateral, Third Loan Collateral, Fourth Loan Collateral, and Fifth Loan Collateral are referred to collectively herein as the "Collateral."

21. Pursuant to the Agreements, Defendant granted Plaintiff a first-priority security interest in the Collateral. In summary, the Collateral consists of the following vehicles (including any other attachments, accessions, substitutions, or replacement parts):

| Agreement | Year | Make | Model | VIN |
|---|---|---|---|---|
| First | 2015 | Wabash | Refrigerated Vans | 1JJV532B6FL875248 |
| Second | 2019 | Utility | Refrigerated Vans | 1UYVS2533K6581817 |
| Third | 2016 | Volvo | VNL-Series | 4V4NC9EH1GN960638 |
| Fourth | 2020 | Volvo | VNL-Series | 4V4NC9EH7LN229111 |
| Fifth | 2020 | Volvo | VNL-Series | 4V4NC9EH2LN265871 |

(the "Collateral").

22. Plaintiff properly perfected its security interest in the Collateral by possessing the Certificates of Title and recording its interest as First Lienholder thereon. True and correct copies of the Certificates of Title for the Collateral are attached hereto as **Exhibit F**.

23. Out of an abundance of caution, to perfect its interest in any attachments, accessions, substitutions, or replacement parts to the Collateral, Plaintiff also recorded its UCC-1 Financing Statement with the Alabama Secretary of State on June 20, 2018. A true and correct copy of the UCC-1 Financing Statement is attached hereto as **Exhibit G**.

24. Under the terms and conditions of the Agreements, failure to make a payment when due is considered an event of default. *See, e.g.*, Ex. A, at ¶ 5.1(a).

25. In addition, under the Agreements, Defendant is obligated to pay late charges and other fees due under the Agreements. *See*, *e.g.*, Ex. A at 1.

26. Under the terms of the Agreements, after an event of default, the lender may accelerate the balances due under the Agreements and declare the entire indebtedness owed pursuant to the Agreements immediately due and payable. *See*, *e.g.*, Ex. A at ¶ 5.2.

27. Under the Agreements, upon acceleration, Defendant is obligated to pay interest on all unpaid amounts at the rate of one and one-half percent (1 1/2%) per month or the maximum rate not prohibited by applicable law. *See*, *e.g.*, Ex. A at ¶ 5.3. Interest is calculated based on a 360 day year consisting of twelve 30 day months. *See*, *e.g.*, Ex. A at 1.

28. Under the terms of the Agreements, after an event of default, Defendant is obligated to pay all expenses of retaking, holding, preparing for sale, and selling the Collateral. *See*, *e.g.*, Ex. A at ¶ 5.2.

29. Under the terms of the Agreements, upon default, Defendant is obligated to pay the attorneys' fees and costs incurred by the lender in the enforcement of its rights under the Agreements. *See*, *e.g.*, Ex. A at ¶ 5.2.

30. In addition, under the Agreements, Defendant is obligated to pay the attorneys' fees and costs incurred by Plaintiff in the enforcement of its rights thereunder, including this lawsuit. *See, e.g.*, Ex. A, at ¶ 5.2(a).

## Defendant's Bankruptcy Case

31. On December 1, 2023, Defendant filed a petition for relief under chapter 11 of title 11 of the United States Code with the United States Bankruptcy Court for the Southern District of Alabama (the "Bankruptcy Court"), initiating Case No. 23-12841 (the "Bankruptcy Case").

32. During the Bankruptcy Case, the Defendant made partial payments under the Agreements.

33. On June 7, 2024, the Bankruptcy Court entered an Order confirming Defendant's Second Amended Plan of Reorganization for Small Business under Chapter 11 (the "Plan"). Pursuant to the Plan, Defendant acknowledged the debt and made an express, unconditional promise for payment, in part, of the amounts due under the Agreements. A true and correct copy of the Plan is attached hereto as **Exhibit H**.

**Default under the Plan and the Agreements**

34. The Plan provided that the Defendant shall be in material default of its Plan obligations if the Defendant fails to make any required payments due under the Plan and the Defendant is given notice and an opportunity to cure the default within 10 days' notice of the default. *See* Ex. H, at § 10.5.

35. Upon a material default under the Plan, Plaintiff is entitled to "pursue all available rights and remedies under the laws of the State of Alabama." *See id.* at § 10.6.

36. Following confirmation of the Plan, Defendant defaulted under the terms of the Agreements, as modified by the Plan, by failing to make payments due and owing.

37. Specifically, Defendant failed to timely make payment on November 10, 2024 and has failed to make each every subsequent payment.

38. On March 20, 2025, the Bankruptcy Court entered a Final Decree and thereby indicated the Bankruptcy Case had been fully administered and closed the Bankruptcy Case.

39. Despite express demand, Defendant has failed or refused to pay the amounts due and owing under the Agreements, as modified by the Plan.

40. Specifically, on March 25, 2025, Plaintiff notified Defendant of Defendant's default under the Plan and made written demand for payment due under Defendant's Agreements, as modified by the Plan. A true and correct copy of the demand letter to Defendant dated March 25, 2025 is attached hereto as **Exhibit I**.

41. Although Plaintiff received some funds from the Defendant during the Bankruptcy Case, the Defendant was unable to fulfil its obligations to Plaintiff under the Agreements and the Plan, and Defendant is in material default of its Plan obligations.

42. According to Plaintiff's books and records, the last partial payment made by Defendant to Plaintiff occurred on November 22, 2024.

43. Due to Defendant's material default, Plaintiff elected to accelerate the amounts due and owing under the Agreements effective November 28, 2023.

44. Calculated as of July 18, 2025, the amount due and owing under the Agreements, including accrued interest and fees, but not including attorneys' fees and expenses or cost of collection is an amount not less than $312,041.23.

45. Pursuant to the Agreements, upon Defendant's default thereunder, Defendant is obligated to immediately turn over to Plaintiff possession of the Collateral.

46. Plaintiff notified Defendant of its default under the Agreements and made demand that Defendant surrender possession of the Collateral to Plaintiff and that Defendant pay the amounts due under the Agreements.

47. Specifically, on July 22, 2025, Plaintiff sent written demand for payment due under Defendant's Agreements, as modified by the Plan, and for surrender of the Collateral to Plaintiff. A true and correct copy of the demand letter to Defendant dated July 22, 2025 is attached hereto as **Exhibit J**.

48. Despite express demand, Defendant has failed or refused to return possession of the Collateral described in the Agreements.

49. The Agreements expressly provide that Defendant unconditionally waives its right to a jury trial of any claim or cause of action relating thereto.

50. Plaintiff has performed any and all conditions and obligations required of it under the Agreements, as modified by the Plan.

51. Plaintiff has retained the services of Husch Blackwell LLP to prosecute this action and has thereby incurred attorneys' fees and is entitled to recover attorneys' fees and costs pursuant to the Agreements. *See, e.g.*, Ex. A, at ¶ 5.2(a).

52. All conditions precedent to the institution of this action have been performed, excused, or have occurred.

## COUNT I
## INJUNCTIVE RELIEF

53. Plaintiff realleges and incorporates the allegations contained in the foregoing paragraphs as if restated fully herein.

54. Defendant continues to possess and utilize, or is capable of utilizing, the Collateral for commercial purposes.

55. On any given day the Collateral is located, or is capable of being located, in diverse places throughout the United States.

56. Based upon the best knowledge, information, and belief of Plaintiff, the Collateral is located at the business address of Defendant, 1229 North Drive, Mobile, Alabama 36605, but the Collateral may not be located at such address at any given time due to the mobile nature of the Collateral.

57. Due to the mobile nature of the Collateral and its location, Defendant is capable of and likely to remove the Collateral from the jurisdiction of the Court.

58. The Collateral depreciates and deteriorates as a result of its continued use by Defendant, with no commensurate value being conferred to Plaintiff in the form of payments due and owing from Defendant.

59. Defendant has or should have in place capabilities to identify, locate, and surrender the Collateral, which capabilities may now be breaking down.

60. The Collateral has not been taken for a tax, assessment, or fine, pursuant to a statute; or seized under an execution against the property of Plaintiff.

61. Defendant has possession of and wrongfully detains the property from Plaintiff in Mobile County, Alabama.

62. Plaintiff will suffer irreparable injury for which no adequate remedy at law exists unless Defendant and other persons and firms having knowledge of this injunction are (a) enjoined from continuing to use the Collateral; (b) ordered to advise Plaintiff of the location of the Collateral; and (c) ordered to surrender the Collateral to Plaintiff.

63. By reason of the foregoing, Plaintiff is entitled to and demands a judgment directing Defendant to immediately surrender to Plaintiff possession of the Collateral.

## COUNT II
## SPECIFIC PERFORMANCE

64. Plaintiff realleges and incorporates the allegations contained in the foregoing paragraphs as if restated fully herein.

65. In the event of default by Defendant under the Agreements, Defendant is obligated to return the respective units of Collateral at its expense and to any location that Plaintiff directs.

66. In the event of default by Defendant under the Agreements, Plaintiff is entitled to take possession of the Collateral or direct Defendant to remove it to a place deemed convenient by Plaintiff.

67. In the event of default by Defendant under the Agreements, Plaintiff is entitled to repossess and remove the Collateral, wherever located.

68. Plaintiff has performed its obligations under the Agreements, and is ready, willing, and able to perform under the Agreements.

69. Despite demand by Plaintiff, Defendant has failed to return the Collateral.

70. Plaintiff is entitled to and demands judgment directing Defendant to perform its obligations under the Agreements.

## COUNT III
**REPLEVIN/ WRIT OF SEIZURE**

71. Plaintiff realleges and incorporates the allegations contained in the foregoing paragraphs as if restated fully herein.

72. This claim is brought pursuant to Rule 64 of the Federal Rules of Civil Procedure, and the statutes, common law, and rules of the State of Alabama, specifically Alabama Rule of Civil Procedure 64.

73. Pursuant to the Agreements, Plaintiff is lawfully entitled to possession of the Collateral.

74. The Collateral is wrongfully detained by Defendant.

75. Defendant came into possession of the Collateral by financing its purchase through Plaintiff, but upon defaulting under its obligations to pay the amounts due and owing under the Agreements, as modified by the Plan, Defendant has failed and refused to surrender possession of the Collateral to Plaintiff.

76. According to the best knowledge, information, and belief of Plaintiff, the reason for the detention is Defendant's unwillingness or inability to fulfill the terms of the Agreements.

77. The Collateral consists of three commercial trucks and two commercial trailers.

78. Based upon the best knowledge, information, and belief of Plaintiff, and in the absence of an inspection and assuming that the Collateral is in immediately salable condition, for purposes of setting bond only and not as an admission of value, Plaintiff estimates the value of the Collateral to be approximately $179,450.00.

79. As set forth in the Agreements, when not in use the Collateral is to be kept at 1229 North Drive, Mobile, Alabama, although due to the mobile nature of the Collateral, it is unlikely that the Collateral will be present at such location at any given time.

80. The Collateral has not been taken for a tax, assessment, or fine, pursuant to a statute; or seized under an execution against the property of Plaintiff.

## COUNT IV
## BREACH OF CONTRACT

81. Plaintiff realleges and incorporates the allegations contained in the foregoing paragraphs as if restated fully herein.

82. The Agreements represent written contracts between Defendant and Plaintiff.

83. Plaintiff performed all of the obligations required of it under the Agreements.

84. Defendant breached the contract by failing to make required payments due under the Agreements, as modified by the Plan.

85. As a result of Defendant's breach, Plaintiff has exercised its right to accelerate the unpaid balance due under the Agreements.

86. Plaintiff has made demand upon Defendant, but Defendant has failed to tender the same in satisfaction of the indebtedness.

87. As a result, Plaintiff has been damaged by Defendant's failure or refusal to remit payment due under the Agreements.

88. Pursuant to the terms of the Agreements, Defendant is obligated to indemnify Plaintiff for any reasonable costs, including attorney's fees, that Plaintiff incurs in enforcing its rights under the Agreements. Plaintiff has already incurred attorney's fees and costs and will continue to incur such fees and costs throughout the proceedings.

89. Defendant has waived its right to a jury trial.

90. For the reasons set forth above, Defendant is liable to Plaintiff for Defendant's breach of contract, plus interest accruing each day and costs of collection, plus all reasonable attorney's fees and costs incurred in this matter, less any net proceeds received from the Collateral.

WHEREFORE, Plaintiff respectfully requests that this Court:

a. Preliminarily and permanently enjoin Defendant and other persons and firms having knowledge of the injunction from using the Collateral as of the date of entry of the injunction order and from restricting Plaintiff's access to the Collateral, and further order Defendant to disclose to Plaintiff the precise location of the Collateral in order for Plaintiff to reclaim it, as set forth in Count I;

b. Enter judgment in Plaintiff's favor and against Defendant that directs Defendant to specifically perform its respective obligations under the Agreements, and to return and allow the removal of the Collateral, as set forth in Count II;

c. Enter an order of replevin granting Plaintiff possession of the Collateral, as set forth in Count III;

d. Award Plaintiff judgment for all damages it has sustained as a result of Defendant's actions as set forth in the Complaint and as a result of Defendant's breaches of the Agreements, as set forth in Count IV, in the exact amount to be proven at or before trial;

e. Award Plaintiff its costs, attorney's fees, and interest on all unpaid amounts due and owing; and

f. Grant Plaintiff such other and further relief as shall be just and equitable.

Dated: July 29, 2025.                    Respectfully submitted,

**HUSCH BLACKWELL LLP**

By:    /s/ *Adam S. Buddenbohn*
      Adam S. Buddenbohn
      Alabama Bar No. ASB-2816-P65O
      736 Georgia Avenue, Suite 300
      Chattanooga, Tennessee 37402
      Telephone: (423) 266-5500
      Facsimile: (423) 266-5499
      Email: Adam.Buddenbohn@huschblackwell.com

***Attorneys for BMO Bank N.A.***